*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2010-418

MARCH TERM, 2011

| | | |
|---|---|---|
| Timothy Clodgo | } | APPEALED FROM: |
| | } | |
| v. | } | Employment Security Board |
| | } | |
| Department of Labor | } | DOCKET NO. 06-10-238-07 |
| (Petropreneurs, LLC, Employer) | } | |

In the above-entitled cause, the Clerk will enter:

Claimant Timothy Clodgo appeals from the Employment Security Board's denial of his application for unemployment compensation benefits. He argues that the Board's key conclusions are not supported by its findings. We affirm.

Claimant was last employed as a mechanic. He left this job in March 2009 on doctor's advice following a job-related injury. In May 2010, claimant applied for unemployment benefits. A claims adjudicator denied his request, finding that claimant was unable to work. An administrative law judge sustained this decision, although on other grounds. Following a hearing, the Board agreed that claimant was not entitled to benefits.

The Board found as follows. After claimant left work, several doctors attempted to treat his pain. By August 2009, claimant was deemed a poor surgical candidate and his pain had increased. He engaged in physical therapy and received injections to relieve pain, with little success. By mid-February 2010, claimant reported small improvements in some areas, but increasing difficulty with leg pain. In late February 2010, claimant underwent tests indicating that, although he had "medium" work capacity, he was unable to sustain that capacity for a full work day. Another medical report stated that claimant's "positional tolerances were poor," and that he had "moderate functional limitations due to subjective comment of pain management and some objective deficits." This report indicated that claimant's current limitations "appeared to result in significant occupational impairments as evidenced by decreased ability to perform work tasks."

In mid-March 2010, one of claimant's examining physicians, a neurosurgeon, ruled out surgery as a means of controlling pain. He opined that claimant "could work in some capacity," and that claimant's pain could be controlled for short periods—about four or five hours—after which "symptoms returned to baseline with continued pain in [claimant's] leg." Another examining physician, Dr. Bicknell, advised that claimant's condition was approaching a "medical end" and that claimant had "light duty work capacity with the ability to lift up to 25 pounds." By the end of March 2010, claimant reported worsening pain. He described how it had taken him ninety minutes to carry a few loads of wood into his house. In early April 2010, claimant was evaluated by John R. Johanson, D.O. Dr. Johanson concluded that claimant had reached a medical "end result" with respect to his injury, and had "at least a light duty full-time work capacity and would benefit from

the services of vocational rehabilitation." He noted that claimant was "unable to toe walk or heel walk," and that claimant stated that just the slightest rising caused too much pain. The doctor also observed that claimant's range of motion was very limited due to pain.

The Board found that claimant was using vocational and rehabilitative services offered by a private firm. Claimant indicated that he was qualified for, and looking for work as, a shop foreman, shop manager, an appliance and electronic service technician and, possibly, a position in building maintenance. Claimant had applied for at least some of these positions. With regard to claimant's present physical capacity, the Board found that he could not sit for more than two or three hours at a time. Walking irritated his back, as did repeated bending at the waist. He could lift no more than twenty-five pounds. The Board noted that claimant performed rehabilitative exercises generally two days per week for two to three hours per day. He also received cortisone shots in his back to reduce inflammation.

Based on these findings, the Board concluded that claimant was not entitled to unemployment benefits. It explained that under 21 V.S.A. § 1343(a)(3), an unemployed individual was eligible to receive benefits only if he or she "[i]s able to work, and is available for work." The Board reasoned that claimant's physical limitations were such that he was unable to work within the meaning of the statute. While claimant tested at "medium" work capacity in February 2010, he did not have the ability to sustain that level for a full work day. At best, the Board found, claimant was described by Dr. Bicknell in March 2010 as having the capacity for performing "light" duty. While Dr. Bicknell did not indicate whether claimant's capacity for such duty was for full or part-time work, Dr. Johanson concluded that claimant's capacity for "light duty" was for full-time work. None of the doctors specified exactly what types of employment might qualify as "light duty," however, or how it would be suitable for claimant in view of his injury and physical limitations. The Board thus looked elsewhere to determine claimant's connection to the labor market with respect to his ability to work.

The Board found that claimant had applied for work with at least two companies, Sears and Ride-Away. Claimant conceded that the Ride-Away job was not feasible for him in view of his back injury. The Sears job was for an appliance service technician. While claimant stated that he would not have a problem with sliding or moving appliances, or disassembling the back of a washer to replace parts, the Board was not convinced that such work could be performed by an individual such as claimant, with his weight-lifting restriction, and given the fact that he experienced substantial pain in using stairs and bending at the waist. The Board was similarly unconvinced that claimant had established, in view of his physical restrictions (including his inability to walk long distances) that he was able to perform services in building maintenance, or as an automotive shop foreman or manager.

While the Board found it evident that claimant was willing and desired to return to full-time work, it could not conclude that he had the physical capacity to do so, or that he had established the existence of opportunities for "light duty" work with respect to the types of employment he was pursuing. The Board therefore denied claimant's application for benefits. One member of the Board dissented. She believed that claimant's willingness to apply for and attempt to maintain full-time employment despite his physical limitations, coupled with the opinion of two doctors that he was capable of performing light duty work, sufficiently established claimant's capacity to work. Claimant appealed from the Board's decision.

Claimant first argues that the Board erred in concluding that he lacked the physical capacity to return to full-time light duty work. He maintains that the record unequivocally establishes his ability to do so. In a related vein, claimant argues that the Board erred in concluding that he failed to establish a sufficient connection to the labor market. Claimant maintains that he proved that there were several jobs that he could perform within a thirty mile geographic radius. He asserts that there is no evidence to suggest that he is incapable of performing certain types of jobs and that the Board engaged in speculation in reaching this conclusion. Finally, claimant argues that because he was working with a vocational rehabilitation counselor, he was not even required to engage in a job search.

On review, we defer to the Board's decision. "Absent a clear showing to the contrary, any decisions within its expertise are presumed to be correct, valid, and reasonable." Bouchard v. Dep't of Emp't & Training, 174 Vt. 588, 589 (1989). We review findings of fact for clear error, and we will uphold the Board's conclusions "if fairly and reasonably supported by those findings of fact." Id. In reviewing the Board's decision, we "must, if possible, construe the Board's findings so as to support the judgment." Id.

Claimant's arguments are necessarily intertwined. As set forth above, an unemployed individual is eligible to receive benefits only if he or she "[i]s able to work, and is available for work." 21 V.S.A. § 1343(a)(3). The Board concluded that claimant lacked the physical capacity to return to the type of full-time work that he was seeking. In other words, he failed to show that a market existed for the type of light duty work he was seeking and capable of performing. This conclusion is supported by the Board's findings and by the evidence.

Regarding claimant's physical health, the Board was not obligated to accept the opinions of claimant's experts, even if this testimony was undisputed. See, e.g., Goode v. State, 150 Vt. 651, 652 (1988) (mem.) ("While the trial court is required to consider and weigh expert testimony, it is not required to accept it even if the expert testimony is undisputed."). As the Board observed, although several doctors concluded that claimant had the capacity for full-time light duty work, neither described exactly what types of employment might qualify as "light duty," or how such work would be suitable for claimant in view of his injury and physical limitations. There was evidence that claimant's leg pain had increased during 2010, that he was unable to "toe walk or heel walk," and that the slightest rising caused claimant too much pain. Claimant also had a very limited range of motion due to pain. As recently as February 2010, there was evidence that claimant's "positional tolerances were poor," and that he had "moderate functional limitations due to subjective comment of pain management and some objective deficits." This same report indicated that claimant's current limitations "appeared to result in significant occupational impairments as evidenced by decreased ability to perform work tasks." The Board weighed the evidence before it and concluded that claimant was not able to perform full-time work. It is for the Board, rather than this Court, to assess the weight and credibility of the evidence. Ellis v. Dep't of Emp't Sec., 133 Vt. 533, 536 (1975). We will not reweigh the evidence on appeal. The record supports the Board's finding that claimant cannot engage in full-time light duty with respect to the positions that he was seeking.

The result is the same when one analyzes claimant's availability for work. "The availability requirement is said to be satisfied when an individual is willing, able and ready to accept suitable work which he does not have good cause to refuse, that is, when he is genuinely attached to the labor market." In re Dunn, 131 Vt. 261, 265 (1973) (citation omitted). "A labor market for an

individual exists when there is a market for the type of services which he offers in the geographical area in which he offers them." Id. (citation omitted). In this case, the Board found that claimant failed to show that he could actually physically perform the jobs that he sought. As set forth above, the Board was not convinced that claimant could perform work as a service technician, building maintenance, or automotive shop foreman or manager given his weight-lifting restriction, and the fact that he experienced substantial pain in using stairs and bending at the waist, and his inability to walk long distances. This conclusion was reasonable given the evidence before the Board. While claimant is plainly looking for work, and has employed a private vocational rehabilitation counselor to assist him, it does not necessarily follow that the statutory requirements are satisfied. As we observed in Ellis, 133 Vt. at 536, a claimant does not demonstrate that he is available for "suitable work" by "applying for numerous jobs unsuitable for him."

Claimant cites a Department of Labor policy that discusses the conditions under which an unemployment insurance claimant may defer his or her active search for work. Claimant acknowledges that a "work search" and "availability for work" are not identical concepts in the unemployment context. The policy states that "[a] claimant with a disability, who is filing for Regular state benefits, and who is utilizing the assistance of any agency, including . . . the Division of Vocational Rehabilitation, is relieved from making the standard number of job contacts." The policy also provides that, like any unemployed worker filing an initial claim, a vocational rehabilitation client receiving unemployment must be "able and available to work" at the time of filing. This is the precise issue presented in this case. While it is to claimant's credit that he is working with a vocational rehabilitation counselor, this alone does not demonstrate that he is "available" for suitable work within the meaning of the statute. To hold otherwise would be inconsistent with the purpose of the unemployment compensation statutes. The object of these laws is not "to provide sick benefits nor to compensate those who cease working because of illness." Willard v. Vermont Unemployment Comp. Comm'n, 122 Vt. 398, 403 (1961). Rather, it is "to assist members of the working force who are made jobless by operations of the economy over which they have no individual control." Id. at 402. As we concluded in Willard, a "claimant's worthiness for compensation based on his impaired physical condition must not lead us to stray from the specific objectives of the statute under which relief is here being sought." Id. at 404. We find no grounds to disturb the Board's opinion.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Brian L. Burgess, Associate Justice